# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-01309-SCT

*PETER NEGLEN, M.D.*
*AND SESHADRI RAJU, M.D.*

*v.*

*LILLIAN BREAZEALE, INDIVIDUALLY,*
*AND AS NEXT OF KIN OF DECEASED,*
*JAMES C. BREAZEALE, AND ON BEHALF*
*OF THE WRONGFUL DEATH*
*BENEFICIARIES OF JAMES C. BREAZEALE*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/21/2005 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WHITMAN B. JOHNSON, III |
| | LORRAINE W. BOYKIN |
| ATTORNEYS FOR APPELLEE: | TED G. MEADOWS |
| | TERRY L. JORDAN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/02/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

WALLER, PRESIDING JUSTICE, FOR THE COURT:

¶1. Lillian Breazeale, individually and on behalf of the wrongful death beneficiaries of James C. Breazeale, filed a complaint based on products liability and medical malpractice against Guidant Corporation, Inc., Endovascular Technologies, Inc., Peter Neglen, M.D., Seshadri Raju, M.D., and Greg Keller, Individually and as Sales Representative for

Endovascular Technologies, Inc.[1]    Dr. Neglen and Dr. Raju filed a motion for summary judgment, asking the Circuit Court of Neshoba County to dismiss the medical malpractice claims based on the two-year statute of limitations.    The circuit court held that, under the discovery rule, the complaint was timely filed.    We granted Dr. Neglen and Dr. Raju permission to bring this interlocutory appeal.    *See* M.R.A.P. 5.    We find that questions of fact exist as to whether the discovery rule applies and that the circuit court therefore properly denied the motion for summary judgment.

### FACTS

¶2.    James Breazeale was admitted to the River Oaks Hospital with an abdominal aortic aneurysm.    An aneurysm is an abnormally large blood vessel or one that balloons outward. The abdominal aorta is a large blood vessel that supplies blood to the abdomen, pelvis, and legs. To surgically repair an abdominal aortic aneurysm, the affected blood vessel is replaced with a graft made of synthetic material.    In this case, the graft used was one manufactured by Guidant Corporation and marketed by Endovascular Technologies.

¶3.    James underwent surgery on February 26, 2001, for repair of the aneurysm.    Dr. Raju and Dr. Neglen were the surgeons.    When James was in the recovery room, he complained of severe abdominal pain and experienced post-surgical bleeding.    James was once again taken to surgery, where the surgeons found he was bleeding extensively from the graft site.    James was placed on a ventilator and died three days later, on March 1, 2001.

---

[1]Guidant Corporation, Inc., Endovascular Technologies, Inc., and Greg Keller, Individually and as Sales Representative for Endovascular Technologies, Inc., are not parties to this appeal.

¶4. Filed on February 25, 2004, Lillian's complaint alleges that Dr. Neglen and Dr. Raju negligently inserted the graft. The doctors filed a motion for summary judgment alleging that Lillian's complaint was time barred because it was filed after the two-year statute of limitations had expired. Lillian claims that the discovery rule applies to her medical malpractice cause of action because she did not become aware of the fact that the graft was defective until Guidant pled guilty to fraud (failing to report the graft's adverse events to the FDA) in June of 2003. The circuit court agreed with Lillian's claim that the discovery rule applied and denied the doctors' motion for summary judgment. From this ruling, the doctors appeal.

## DISCUSSION

¶5. We apply a de novo standard of review concerning the propriety of a trial court's grant or denial of summary judgment. *McKinley v. Lamar Bank*, 919 So. 2d 918, 926 (Miss. 2005). *See also* ***Montgomery v. Woolbright***, 904 So. 2d 1027, 1029 (Miss. 2004); ***Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co.***, 858 So. 2d 129, 130 (Miss. 2003); ***Armistead v. Minor***, 815 So. 2d 1189, 1191-92 (Miss. 2002). We look at all evidentiary matters in the record, including, inter alia, admissions in pleadings, answers to interrogatories, depositions, and affidavits. *McKinley*, 919 So. 2d at 926. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Id.*

¶6.    Lillian claims the two doctors (1) negligently inserted the graft; and (2) intentionally withheld information from James, who would not have undergone the surgery had he known all of the facts about the Guidant graft.[2]

*The Discovery Rule and the Statute of Limitations*

¶7.    The discovery rule tolls the statute of limitations until a plaintiff should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent. ***Wright v. Quesnel***, 876 So. 2d 362, 366 (Miss. 2004) (citing ***Wayne Gen. Hosp. v. Hayes***, 868 So. 2d 997, 1000-01 (Miss. 2004)).  In other words, statute of limitations begins to run when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner. ***Hayes***, 868 So. 2d at 1000 (citing ***Williams v. Clay County***, 861 So. 2d 953, 976 (Miss. 2003), *overruled on other grounds,* ***Page v. Univ. of So. Miss.***, 878 So. 2d 1003, 1005 (Miss. 2003)).  Miss. Code Ann. § 15-1-36(2) (Rev. 2003) provides:

> [N]o claim in tort may be brought against a licensed physician . . . for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or *with reasonable diligence might have been first known or discovered . . . .*

(Emphasis added).

¶8.    To benefit from the discovery rule, a plaintiff must be reasonably diligent in investigating his or her injuries. ***Wright***, 876 So. 2d at 366 (citing ***Hayes***, 868 So. 2d at 1001).

---

[2]In her complaint, Lillian describes this cause of action as "lack of informed consent."

The focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he or she probably has an actionable injury. *Id.* at 366. The discovery rule protects persons with *latent* injuries, that is, injuries which are not manifested or ascertainable within a reasonable time following the negligent act. *Id.* A latent injury is defined as one where the "plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999), *on subsequent appeal sub nom.,* **Howard v. Totalfina E&P USA, Inc.**, 899 So. 2d 882 (Miss. 2005)). We have gone so far as to say that "if a latent injury is *not* present the discovery rule would *not* apply." *Lowery*, 909 So. 2d at 50 (citing *Chamberlin v. City of Hernando*, 716 So. 2d 596, 602 (Miss. 1998)) (emphasis in original).

¶9.     The discovery rule protects plaintiffs with latent injuries. *Wright*, 876 So. 2d at 366. A latent injury precludes the plaintiff from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Lowery*, 909 So. 2d at 50 (quoting *Donald*, 735 So. 2d at 168).

¶10.    A layperson undergoing a surgical procedure trusts in and relies on the instructions, professional expertise and guidance of his or her physician. Dr. Neglen and/or Dr. Ragu told Lillian that the complications arising from James' surgery were ordinary risks that accompany

any surgery. This statement raises a question of fact as to when the alleged negligence could have been discovered because, in fact, the two doctors were required to inflate artificially James' blood vessels to insert the graft. Also, a question of fact exists as to whether the doctors should have abandoned the procedure when they determined that James' blood vessels were brittle. This information was not given to Lillian. Under these circumstances, we cannot conclude *as a matter of law* that Lillian did not act diligently by trusting the doctors' opinions and waiting over two years before requesting James' medical records.

¶11. We therefore find that, since questions of fact exist, the doctors' motion for summary judgment was properly denied.

## CONCLUSION

¶12. The circuit court's denial of the motion for summary judgment filed by Dr. Neglen and Dr. Raju is affirmed, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

¶13. **AFFIRMED AND REMANDED.**

**SMITH, C.J., COBB, P.J., DIAZ, EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**