# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00527-SCT

*WESTERN WORLD INSURANCE GROUP, AS*
*SUBROGEE OF SUNBELT SHAVINGS, LLC,*
*SHUQUALAK LUMBER COMPANY, INC. AND*
*WOOD CARRIERS, INC.*

*v.*

*KC WELDING, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/2022 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| TRIAL COURT ATTORNEYS: | TIMOTHY DALE CRAWLEY |
| | ROBERT DAVIS HOUSE |
| | TERRY L. WELCH |
| | CRISTOFOR MORGHAN TAYLOR |
| | GEORGE ELLIS ABDO, III |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | TIMOTHY DALE CRAWLEY |
| | TERRY L. WELCH |
| | JEFFREY W. GUNN |
| | ROBERT DAVIS HOUSE |
| ATTORNEY FOR APPELLEE: | GEORGE ELLIS ABDO, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/12/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. On July 12, 2018, Sunbelt Shavings, LLC (Sunbelt), requested that an employee from KC Welding, LLC (KC Welding), come to Sunbelt's property to repair the door of a box containing wood chips. KC Welding arrived and welded the box containing the wood chips. Later that night, a fire started at Sunbelt's property. The fire was extinguished on July 13,

2018. Three years later, on July 13, 2021, Western World Insurance Group (Western World), as the subrogee of Sunbelt, Shuqualak Lumber Co., and Wood Carriers, Inc., sued KC Welding for breach of contract and negligence. KC Welding moved to dismiss the case as untimely. On May 2, 2022, the trial court granted KC Welding's motion, dismissing Western World's complaint as untimely. Western World appeals.

**FACTS**

¶2. Sunbelt manufactures and sells wood shavings that are commonly used as bedding solutions for horses, livestock, and other outdoor pets. The shavings are stored in metal bins with doors at the bottom. Sunbelt, Shuqualak Lumber, and Wood Carriers are all insured under the same Western World insurance policy.

¶3. On July 12, 2018, Sunbelt contacted KC Welding and requested someone to repair a metal storage bin, the door of which had become stuck. A KC Welding employee arrived later that day and welded the broken metal storage bin containing wood shavings. Later that night, a fire began in the metal storage bin that KC Welding had welded, spreading across Sunbelt's property. The fire burned throughout the night of July 12, and it was finally extinguished in the early morning hours of July 13, 2018. Three years later, on July 13, 2021, Western World, as the subrogee of Sunbelt, Shuqualak Lumber, and Wood Carriers, filed a complaint against KC Welding, alleging negligence and breach of contract.

¶4. On September 8, 2021, KC Welding filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." KC Welding argued that Western World failed to file its lawsuit before the three-year statute of limitation expired and that this failure required the

2

trial court to dismiss Western World's complaint with prejudice. Specifically, KC Welding argued that the fire started on July 12, 2018, so the latest date Western World could have filed its lawsuit against KC Welding was July 12, 2021. Western World responded to KC Welding's motion, arguing that its complaint should not be barred by the statute of limitations "because the injury was not discovered until the fire was extinguished on July 13, 2018." Further, Western World argued that the elements of both causes of actions were not present until July 13, 2018.

¶5. A hearing on KC Welding's motion was held on December 3, 2021. Western World argued that a reading of Mississippi Rule of Civil Procedure 6(a) suggested that the statute of limitations could not have begun running on July 12 when the fire began because it continued burning until July 13. It further argued that if July 13, 2018, is the day the claim accrued, the statute of limitations would actually begin running on July 14, 2018. KC Welding argued that Mississippi case law states that a claim accrues on the day all elements are present. KC Welding also informed the court that Western World's argument that the statute of limitations should actually begin running on July 14, 2018, was not briefed.

¶6. The trial court found "as a matter of fact . . . the cause of action accrued on July the 12th and not from the date of discovery." The trial court also found that the fire was not a latent injury. Based on the trial court's reading of Rule 6(a), it determined that the cause of action accrued on July 12, 2018, but the statute of limitations began running on July 13, 2021. The trial court denied KC Welding's motion to dismiss because Western World filed its complaint before the statute of limitations had expired.

3

¶7.     Following a series of letters sent to the trial court after its denial of KC Welding's motion to dismiss, a hearing to reconsider was held on April 25, 2022.[1]  At this hearing, Western World argued that the statute of limitations did not begin running until July 13, 2018, because that was the earliest date that every element of the alleged torts were present. Therefore, Western World argued, the statute of limitations had not run when the complaint was filed on July 13, 2021.

¶8.     KC Welding responded, arguing that the three-year statute of limitations began running when the cause of action accrued.  Further, it argued, "courts have held that the cause of action accrues when it comes into existence as an enforceable claim."  KC Welding also stated, "The moment the fire occurred, there was damage."  Therefore, the statute of limitations began running on July 12, 2018.

¶9.     The trial court asked KC Welding, "[W]hat if one building burned at the time that you're contending on the 12th and then another building burned during the 13th? Then the injury [is not] completed. It's only a partial injury."  KC Welding argued that if the trial court followed Western World's logic, "you could toll the statute of limitations almost indefinitely . . . by claiming [you were] damaged again, but clearly that's not the way the law necessarily works."  Instead, the court must determine the statute of limitations began running at the earliest date, which was July 12, 2018, when the fire began.  Therefore, KC Welding argued, the complaint filed on July 13, 2021, was a day late.

---

[1] No official motion was made for this hearing.  This was all done based on letters sent to the trial court after the initial hearing denying KC Welding's motion to dismiss. Further, the trial court never entered an order denying KC Welding's motion to dismiss after the December hearing on the motion to dismiss.

¶10.    Western World disagreed with KC Welding's stance. Western World further argued that a cause of action cannot accrue until a plaintiff has discovered or should have discovered an injury. Western World could not have discovered the full injury until July 13, 2018, because the fire "continued raging" through the night of July 12, 2018, and into the morning hours of July 13, 2018.

¶11.    The trial court informed both parties that it believed the issue before it was one of first impression and that the Supreme Court or Court of Appeals needed to provide direction. The trial court granted KC Welding's motion to dismiss, holding that the complaint was barred by the statute of limitations. The trial court stated that it expected the case to be appealed, so the appellate courts could provide a ruling on the particular factual scenario.

¶12.    On May 2, 2022, the trial court issued its final judgment, granting KC Welding's motion to dismiss with prejudice "due to the applicable statute of limitations." Western World timely appealed and raised two issues: (1) the trial court erred by determining that the fire was not a latent injury that the discovery rule applied to, which would toll the accrual of this action; and (2) the trial court erred by determining the cause of action accrued on July 12, 2018, when the fire started and not when the fire was extinguished on July 13, 2018.

¶13.    This case does not present an issue of first impression. Rather, this case concerns a known injury that arose on July 12, 2018, and the failure to properly file a complaint within the three-year statute of limitations period under Mississippi Code Section 15-1-49. Upon review, this Court affirms the trial court's dismissal of Western World's complaint with prejudice because the statute of limitations expired.

5

¶14.   This Court reviews a trial court's grant of a motion to dismiss de novo. ***Cent. Insurers of Grenada, Inc. v. Greenwood***, 268 So. 3d 493, 497 (Miss. 2018) (citing ***McClain v. Clark***, 992 So. 2d 636, 637 (Miss. 2008)).

      **1.**      **The fire was not a latent injury, so the discovery rule does not apply.**

¶15.   Western World argues that the July 12, 2018 fire was a latent injury "for which the 'discovery rule' applied to toll the accrual of the cause of action." Western World asserts that "[i]n situations where a fire destroys or causes damage to certain property and the cause is not immediately known, whether the property owner has suffered a legal injury . . . is not always apparent while the structure is still burning." Western World essentially argues that the inability to immediately know the cause of a fire creates a latent injury. This is in contrast to our jurisprudence, however.

¶16.   Mississippi Code Section 15-1-49 states, "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49(1) (Rev. 2019). This statute also provides for latent injuries and the discovery rule: "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2) (Rev. 2019).

¶17.   This Court has held that "'[c]auses of action accrue upon discovery of the injury, *not discovery of the injury and its cause*.' 'Knowledge of the cause of the injury is irrelevant to

6

the analysis; rather, the inquiry is when the plaintiff knew or should have known of an injury.'" *F & S Sand, Inc. v. Stringfellow*, 265 So. 3d 170, 174 (Miss. 2019) (alteration in original) (emphasis added) (citations omitted) (quoting *Am. Optical Corp. v. Est. of Rankin*, 227 So. 3d 1062, 1068 (Miss. 2017)); *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1059 (Miss. 2012); *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 51 (Miss. 2005).

¶18.    There must be a latent injury for the discovery rule to apply. Miss. Code Ann. § 15-1-49(2).   A latent injury is defined "as one where the 'plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act.'" *Sutherland v. Est. of Ritter*, 959 So. 2d 1004, 1008 (Miss. 2007) (alterations in original) (internal quotation marks omitted) (quoting *Neglen v. Breazeale*, 945 So. 2d 988, 991 (Miss. 2006)).

¶19.    If a latent injury exists, the discovery rule will toll the statute of limitations "until a plaintiff 'should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent.'" *Id.* at 1009 (Miss. 2007) (internal quotation marks omitted) (quoting *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1000-01 (Miss. 2004)).   A plaintiff knows or reasonably should know "that some negligent conduct had occurred, even if they did not know with certainty that the conduct was negligent as a matter of law." *Id.* (emphasis omitted) (internal quotation marks omitted) (quoting *Lowery*, 909 So. 2d at 51).   A plaintiff's knowledge is determined by the specific facts of the case. *Lowery*, 909 So. 2d at 51.

¶20. The July 12, 2018 fire was not a latent injury as this Court defines. At a hearing, Western World described this fire as "raging," which means the injury at issue was not hidden or unseen. *Sutherland*, 959 So. 2d at 1008. Further, Western World was not "precluded from discovering harm or injury." *Id.* (quoting *Neglen*, 945 So. 2d at 991).

¶21. Additionally, Western World did have the requisite knowledge for a cause of action to accrue on July 12, 2018, when the fire started. Western World alleged in its complaint that a KC Welding employee arrived on July 12, 2018, to repair a storage bin filled with wood chips. Western World stated that Sunbelt employees "discovered that KC Welding employees were welding on the storage bin that had not been emptied" of the wood chips. Upon this discovery, Sunbelt employees asked the KC Welding employee to "leave the premises immediately, and the Sunbelt employees attempted to soak the area where he had been working with water." Western World further alleged that on the night of July 12, 2018, "apparently as a result of smoldering wood shavings inside the bin, the storage bin ignited, creating a fire that subsequently spread through the Sunbelt Shavings property." A fire starting later that evening, on the same day, suggests that there would have been enough knowledge to know a negligent act occurred. *Sutherland*, 959 So. 2d at 1009.

¶22. The fact that Western World did not know every precise detail about the fire on July 12, 2018, does not show a latent injury nor did it toll the statute of limitations. *Id.* Rather, Western World's knowledge of a fire on July 12, 2018, and the facts surrounding KC Welding's actions on the Sunbelt property earlier that day provide Western World with the requisite knowledge for a cause of action to accrue, causing the statute of limitations to begin

8

running on July 12, 2018. Therefore, this Court finds that the fire was not a latent injury that would require the statute of limitations to be tolled.

### 2. The cause of action accrued on July 12, 2018.

¶23. Western World argues that the trial court "erred in finding that a cause of action related to a fire began when the fire started on July 12, 2018, and not when it was extinguished some five to six hours later [on] July 13, because actions proceed from 'events' and the plain meaning of an 'event', as applied to a fire, is its duration from ignition to extinguishment." As stated above, the fire starting on July 12, 2018, and the specific facts of this case indicate that the cause of action accrued on July 12, 2018. Therefore, this Court finds that a cause of action accrued on July 12, 2018.[2] Western World had until July 12, 2021, to bring a timely claim against KC Welding.

### CONCLUSION

¶24. This Court affirms the trial court's dismissal of Western World's complaint as untimely.

¶25. **AFFIRMED.**

---

[2] Both parties assert in their briefs that *Caves v. Yarborough* controls the question of when the statute of limitations began to run. This Court disagrees. *Caves v. Yarborough* required this Court to determine when the limitations period for the Mississippi Tort Claims Act began to run—not Mississippi Code Section 15-1-49. *Caves v. Yarborough*, 991 So. 2d 142, 155 (Miss. 2008). In making this determination, this Court stated, "in applying the statutory language of the MTCA, the statute of limitations *for claims thereunder* begins to run when all the elements of a tort, or cause of action, are present." *Id.* at 147 (emphasis added). This case is not applicable here because the language in *Caves* specifically states that the decision pertains to claims made under the MTCA, not Mississippi Code Section 15-1-49.

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND GRIFFIS, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶26.    Respectfully, I dissent. For the purpose of calculating the statute of limitations, a critical distinction exists between mere knowledge of a harm and discovery that the harm is related to a legally cognizable injury. A fire at the site of an industrial wood chip manufacturer is an occurrence that could be attributable to natural events. I would find that the legal injury was latent during the time the ongoing conflagration precluded investigation of the fire's origin. Because the statute began to run the day the fire was extinguished and not the previous day when the fire began, I would find that the lawsuit was timely filed.

¶27.    This case presents the question of whether the three-year statute of limitations started to run on a negligence claim the evening a fire began or early the next day when it was extinguished and its cause could be discovered. The fire began on the night of July 12, 2018, and was extinguished in the early hours of July 13, 2018. The plaintiff insurer initiated this subrogation action on July 13, 2021. The plaintiffs argue that they did not know the origin or the cause the fire until it became possible for them to inspect the fire's ruins and that they could not have inspected the ruins until after the fire was extinguished.[3]

---

[3] The trial court, in granting the defendant's motion to dismiss due to the expiration of the statute of limitations, said:

> I think it is a case of first impression here and the Supreme Court or Court of Appeals is going to have to give us a little more direction than they have. If I rule for the Defendant, that's a final verdict that everybody can appeal and I see this case as going to an appellate court no matter what I rule and I'd hate to put y'all through the expense of going through a trial if it's just going to be

¶28. Mississippi Code Section 15-1-49(2) provides that "[i]n actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2) (Rev. 2019). This statute tolls the running of the statute of limitations for "(1) latent injuries or (2) nonlatent injuries where the negligence that caused the injury is not known." *Raddin v. Manchester Educ. Found., Inc.*, 175 So. 3d 1243, 1249 (Miss. 2015). An injury is latent when the party is "precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . [or] when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) (alterations in original) (internal quotation mark omitted) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 168 (Miss. 1999)). The latent injury rule recognizes that:

> There may be rare cases where the [injured party] is aware of his injury prior to the . . . [limitations period], but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.

*Smith v. Saunders*, 485 So. 2d 1051, 1052-53 (Miss. 1986).

¶29. Knowledge that one has suffered damage is distinct from knowledge that a violation of a legal right (an injury under the law) has occurred. *See Tallahatchie Valley Elec. Power*

overruled or reversed and rendered.

11

***Ass'n v. Miss. Propane Gas Ass'n, Inc.***, 812 So. 2d 912, 925 (Miss. 2002). Additionally, "there is no bright line rule" for us to apply when determining whether an injury is latent; instead, we must look to "the specific facts of the case." ***Lowery***, 909 So. 2d at 51 (citing ***Sweeney v. Preston***, 642 So. 2d 332, 336 (Miss. 1994)). It is not "reasonable to subsequently bar a person's cause of action when they had no initial reason to know that time was running." ***Evans v. Boyle Flying Serv., Inc.***, 680 So. 2d 821, 827 (Miss. 1996) (holding that the statute of limitations began running not on the day chemicals were sprayed but on the day that the medical damage due to exposure to the chemicals manifested).

¶30.    In ***Punzo v. Jackson County***, 861 So. 2d 340, 346 (Miss. 2003) , this Court found that the latent injury rule applied when a homeowner sued Jackson County for negligent performance of bridge repairs. ***Id.*** The repairs to the bridge had resulted in an altered water flow that caused periodic flooding of the plaintiff's house. The suit was brought years after the plaintiff's home initially flooded but within one year of "his discovery of the County's negligent rebuilding of the bridge." ***Id.*** at 344. We maintained that the initial "flood [did] not create enough notice of an actionable claim's existence or of someone's fault." ***Id.*** at 346; *see also* ***Hood v. A&A Excavating Contractors***, 338 So. 3d 145, 147 (Miss. Ct. App. 2021) (knowledge of legally cognizable injury marked from time of second flood to plaintiff's house).

¶31.    Similarly here, the mere fact that a fire broke out and caused damage to the property of an industrial wood chip manufacturer was insufficient to place the plaintiff on notice that another's negligence had caused the fire. Like the flood in ***Punzo***, a fire could be attributable

to natural causes. On July 12, 2018, the nature of the ongoing conflagration precluded discovery that the fire had originated at the location of recent repair work. This "inherently undiscoverable nature of the wrongdoing" while the fire was ongoing satisfies our definition of a latent injury and triggers the protection of the discovery rule. *Lowery*, 909 So. 2d at 50 (quoting *Donald*, 735 So. 2d at 168). Significantly, nothing in the record indicates that the plaintiff had knowledge of what had started the fire that caused the damage. *See Sims v. Bear Creek Water Ass'n*, 923 So. 2d 230, 233 (Miss. Ct. App. 2005) (unlike in *Punzo*, plaintiffs had early knowledge of a connection between foundation problems and broken water pipes via an expert inspection and report).

¶32.    The majority, in asserting that the "raging" "fire was not a latent injury[,]" does not make an adequate distinction between discovery of damage and discovery of the proximate cause of a cognizable injury. See Maj. Op. ¶ 20 (internal quotation marks omitted). What was latent was not the fire itself but that the origin of the fire could be related to the defendant's repair work on the storage bin. The inquiry into whether an injury is latent is fact intensive on a case-by-case basis. On these particular facts as they appear in the record before us, I would find that the statute of limitations began to run on July 13, 2018.  Because I would find that the complaint was timely filed, I dissent.

**KING, P.J., AND GRIFFIS, J., JOIN THIS OPINION.**